FILED
2014 Feb-14  PM 03:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **EDDIE CHAMBERS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:12-CV-1109-VEH** |
| | ) |
| **CITY OF BIRMINGHAM, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

---

## <u>MEMORANDUM OPINION</u>

## I.    INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Eddie Chambers ("Mr. Chambers") initiated this civil rights lawsuit on April 13, 2012, against Defendants City of Birmingham ("COB"), Officer T. Gardiner ("Officer Gardiner") (sued both individually and officially), and Officer Raynard E. Escott ("Officer Escott") (sued both individually and officially). (Doc. 1). Mr. Chambers's complaint contains three causes of action which assert federal and state constitutional claims stemming from his arrest for obstructing government operations on April 16, 2010, and his subsequent termination from employment by the COB. (Doc. 1 ¶¶ 11-12, 23; *see also* Doc. 44 ¶¶ 11-12, 23)[1].

---

[1]  Because the version of Mr. Chambers's complaint filed into CM/ECF was missing a page, the court, on December 20, 2013, with Defendants' consent, granted Mr. Chambers leave to file a corrected complaint into the record. (Doc. 43). Mr. Chambers separately filed in his corrected

On August 22, 2013, Mr. Chambers filed a Motion To Dismiss Certain Claims Without Prejudice (Doc. 33) (the "Dismissal Motion").The court granted Mr. Chambers's Dismissal Motion on September 17, 2013, and dismissed without prejudice Count Three of his complaint pertaining to the COB's alleged wrongful termination of Mr. Chambers's employment. (Doc. 35).

As a result, the scope of Mr. Chambers's complaint is now limited to the police misconduct allegations asserted in Counts One and Two. Count One contends that Defendants have committed "unlawful and false imprisonment and excessive use of force, all in violation of the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983." (Doc. 44 ¶ 15). Count Two maintains that "[t]he acts and conduct of the Defendants constitute false arrest and false imprisonment under the laws and Constitution of the State of Alabama . . . ." (*Id.* ¶ 20).

Pending before the court is Defendants' Motion for Summary Judgment (Doc. 34) (the "Motion") filed on August 28, 2013. The parties have supported and opposed the Motion. (Docs. 37-41).[2] Accordingly, the Motion is ready for disposition and, for the reasons explained below, is due to be granted.

---

complaint on that same date. (Doc. 44).

[2] As part of their reply, Defendants filed a Motion To Strike Certain Undisputed Facts (Doc. 41) (the "Strike Motion") and also requested oral argument on their Motion. (Doc. 41 at 1). Mr. Chambers has not responded to either of these requests.

## II.   FACTUAL BACKGROUND[3]

At all times relevant, both Officers Escott and Gardiner were employees of the COB's Police Department. AF Nos. 1, 2.[4] On April 16, 2010, John Heard ("Mr. Heard") and his landscaping work crew were at the COB Roosevelt Park doing landscaping work as contractors for the COB's Water Works Board. AF No. 3. Reginald Tate ("Mr. Tate"), an employee of the COB's Water Works Board, had several Water Works Board employees, including himself, present at Roosevelt Park on that same date. AF Nos. 4, 5.

---

[3]  Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party).This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

[4]  The designation "AF" stands for admitted fact and indicates a fact offered by Defendants that Mr. Ward has admitted in his written submissions on summary judgment, in his deposition testimony, or by virtue of any other evidence offered in support of his case. Under appendix II of the court's uniform initial order (Doc. 4) entered on April 17, 2012, "[a]ll statements of fact must be supported by specific reference to evidentiary submissions." (*Id.* at 16). For Mr. Chambers, more specifically, this means that "[a]ny statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based." (*Id.* at 17). Consequently, whenever Mr. Chambers has inadequately asserted a dispute over a fact that Defendants have otherwise substantiated with an evidentiary citation, the court has reviewed the cited evidence and, if it in fact fairly supports Defendants' factual assertion, has accepted Defendants' fact. On the other hand, whenever Mr. Chambers has adequately disputed a fact offered by Defendants, the court has reviewed the evidence cited by Mr. Chambers and, if it in fact fairly supports Mr. Chambers's factual assertion, has accepted Mr. Chambers's version. The court's numbering of admitted facts (e.g., AF No. 1) corresponds to the numbering of Defendants' statement of undisputed facts as set forth in Doc. 34-1 and responded to by Mr. Chambers in Doc. 37.

Mr. Chambers and Daryl Whitt ("Mr. Whitt") were plumbers with the COB. AF No. 6. On April 16, 2010, Mr. Chambers and Mr. Whitt went to Roosevelt Park to repair a leaking pipe. AF No. 7. Defendants maintain that while Mr. Heard and his crew were working at Roosevelt Park, Mr. Chambers accosted them. (Doc. 34-2 at 1-2).[5] Contrastingly, Mr. Chambers disputes that any argument or confrontation occurred, and instead indicates that after introducing himself to them, he realized that he could not understand their speech. (Doc. 40-1 at 32-34).[6]

Defendants further contend that Mr. Chambers confronted Mr. Tate at Roosevelt Park. (*See* Doc. 34-2 at 25 ("[W]e were confronted by Eddie Chambers.")); (*id.* ("I did not want to be attacked by Mr. Chambers who was irate and out of control."))[7]. Mr. Chambers disputes that he had any menacing interactions with Mr. Tate as well. (*See* Doc. 38-1 at 1 ("On April 16, 2010, I never confronted anyone including Mr. Reginald Tate.")).

Mr. Tate waited for law enforcement to arrive, as the police had been called by the dispatch office earlier. AF No. 22. Officer Escott was one of the police officers who was dispatched to Roosevelt Park concerning a reported disturbance with an irate black

---

[5]   All page references to Doc. 34-2 correspond with the court's CM/ECF numbering system.

[6]   All page references to Doc. 40-1 correspond with the court's CM/ECF numbering system.

[7]   All page references to Doc. 34-2 correspond with the court's CM/ECF numbering system.

4

male. AF No. 24. Upon Officer Escott's arrival on the scene, Mr. Heard and Mr. Tate informed him about their respective versions of what had transpired with Mr. Chambers and indicated that Mr. Chambers had gone inside the Roosevelt Park Recreational Center building. AF No. 28; (*see also* Doc. 34-2 at 2-3).

Officer Escott went into the Recreational Center building and saw a person, *i.e.*, Mr. Chambers, on the telephone. AF No. 30. Officer Escott asked whose truck was parked outside and Mr. Chambers raised his hand and answered "me." AF Nos. 31, 32. Officer Escott asked to speak with Mr. Chambers and Mr. Chambers got off the telephone. AF Nos. 33, 34.

Defendants contend that Mr. Chambers then refused to cooperate with Officer Escott and that, more specifically, Mr. Chambers refused to give Officer Escott his identification. (Doc. 34-1 at 7 ¶¶ 35-37). Mr. Chambers responds that Officer Escott never asked him for his identification and that he cooperated fully with Officer Escott. (Doc. 37 at 4 ¶¶ 35-37). Mr. Chambers further states that, although he was handcuffed, Officer Escott never told him that he was under arrest. (Doc. 37 at 4 ¶ 39).

Mr. Chambers told Officer Escott that he had been hurt at the time of the handcuffing (Doc. 40-1 at 158), and Officer Escott decided to transport Mr. Chambers to Cooper Green Hospital. AF No. 53. Officer Escott's shift ended while Mr. Chambers was being examined at Cooper Green Hospital. AF No. 55.

Officer Escott called for a transport officer and Officer Gardiner came to Cooper Green Hospital to take Mr. Chambers to the Birmingham City Jail. AF No. 55. Officer Gardiner put Mr. Chambers back into handcuffs with his arms behind his back before taking him to the Birmingham City Jail. Mr. Chambers maintains that Officer Gardiner's actions in handcuffing him were improper because Mr. Chambers had requested to be cuffed in the front due to his injury and because he was never a threat to anyone's personal safety. (Doc. 37 at 6 ¶ 57).

Mr. Chambers was charged with obstructing governmental operations. (Doc. 34-2 at 7). While Defendants suggest, by way Officer Escott's affidavit (Doc. 34-2 at 7-8) and again in Officer Gardiner's affidavit (Doc. 34-2 at 17), that a magistrate found probable cause for Mr. Chambers's arrest and that a Warrant of Arrest was issued for Mr. Chambers, the court has been unable to locate a copy of such warrant in the record. At the same time, however, Mr. Chambers does not dispute contest this fact in opposing summary judgment. Ultimately, the obstruction charge against Mr. Chambers was nolle prossed on March 12, 2012. (Doc. 38-1 at 2).

## III.   STANDARDS

### A.     Summary Judgment Generally

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R . Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510,  91 L. Ed. 2d 202 (1986). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).

Finally "[i]f the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense." *International Stamp*, 456 F.3d at 1274 (citing *Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).

**B.    Qualified Immunity**

Both individual defendants assert that qualified immunity bars Mr. Chambers's § 1983 claims brought against them in their personal capacities. (Doc. 34-1 at 15). "The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (internal quotation marks omitted) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003)). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." *Id*.

This is a two-part test. Under the first step, "the defendant must [prove that he or she was] performing a function that, but for the alleged constitutional infirmity, would have fallen within his legitimate job description." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Next, the defendant must prove that he or she was "executing that job-related function." *Id.* at 1267. "Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Cottone*, 326 F.3d at 1358.[8]

---

[8] Here, there is no dispute over whether the individual defendants were all acting within the scope of their discretionary authority. (*See* Doc. 37 at 14 n.2 ("Mr. Chambers does not dispute that the officers were engaged in discretionary functions.")).

Until 2009, the Supreme Court had required a two-part inquiry to determine the applicability of qualified immunity, as established by *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Under the *Saucier* test, "[t]he threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S. Ct. 2508, 2513, 153 L. Ed. 2d 666 (2002).

If, under the plaintiff's allegations, the defendants would have violated a constitutional right, "the next, sequential step is to ask whether the right was clearly established." *Cottone*, 326 F.3d at 1358 (quoting *Saucier*, 533 U.S. at 201, 121 S. Ct. at 2156). The "clearly established" requirement is designed to assure that officers have fair notice of the conduct which is proscribed. *Hope*, 536 U.S. at 739, 122 S. Ct. at 2515. This second inquiry ensures "that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier*, 533 U.S. at 206, 121 S. Ct. at 2158.

The "unlawfulness must be apparent" under preexisting law.[9] *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L. Ed. 2d 523 (1987) (citing *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S. Ct. 1092, 1097-98, 89 L. Ed. 2d 271

---

[9] Only Supreme Court, Eleventh Circuit, and Alabama Supreme Court cases can "clearly establish" the law in this litigation. *See Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003) ("In this circuit, rights are 'clearly established' by decisions of the Supreme Court, this court, or the highest court of the state in which the case arose." (citing *Hamilton v. Cannon*, 80 F.3d 1525, 1532 n.7 (11th Cir. 1996))).

(1986)). Therefore, a temporal requirement exists related to this inquiry. More particularly, a plaintiff must show that a reasonable public officer would not have believed her actions to be lawful in light of law that was clearly established at the time of the purported violation. *See Anderson*, 483 U.S. at 639,107 S. Ct. at 3038 ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' <u>at the time</u> it was taken[.]") (emphasis added) (citation omitted); *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 599, 160 L. Ed. 2d 583 (2004) ("If the law <u>at that time</u> did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.") (emphasis added); *Brosseau*, 543 U.S. at 198, 125 S. Ct. at 599 ("Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law <u>at the time</u> of the conduct.") (emphasis added); *see also Johnson v. Clifton*, 74 F.3d 1087, 1093 (11th Cir. 1996) ("We know of no [preexisting] case which might have clearly told Clifton that he could not take the disciplinary action indicated by an investigation which was initiated before he even knew about the allegedly protected speech, and in circumstances where the public concern implication was doubtful.").

However, the *Saucier* framework was made non-mandatory by the Supreme Court in *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009), in which the Court concluded that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." Thus, "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Despite the Supreme Court's modification of *Saucier*'s analytical process, the substantive analysis remains unchanged; an officer is entitled to qualified immunity protection as long as he "could have believed" his conduct was lawful. *Hunter v. Bryan*, 502 U.S. 224, 227, 112 S. Ct. 534, 536, 116 L. Ed. 2d 589 (1991).Therefore, to deny immunity, a plaintiff must affirmatively demonstrate that "no reasonable competent officer would have" acted as the public official did. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096, 89 L. Ed. 2d 271 (1986).

## IV.   ANALYSIS

### A.   Mr. Chambers's First Cause of Action

#### 1.   Federal Claims Asserted Against Officers Escott

**and Gardiner**

**a.      Official Capacity Claims**

A § 1983 claim against a person in his official capacity seeks to impose liability

on the entity which he represents, and not on him personally. *See, e.g., Welch v. Laney*,

57 F.3d 1004, 1008 (11th Cir. 1995) ("Welch's action against the Sheriff and Chief

Deputy Sheriff in their official capacities imposes liability on the entity they represent,

and not on them as individuals." (citing *Brandon v. Holt*, 469 U.S. 464, 471-72, 105

S. Ct. 873, 877-78, 83 L. Ed. 2d 878 (1985))). As the Eleventh Circuit has explained

the distinctions between these two capacities in more detail:

> "Personal-capacity suits seek to impose personal liability upon a
> government official for actions he takes under color of state law.
> Official-capacity suits, in contrast, 'generally represent only another way
> of pleading an action against an entity of which an officer is an agent.'"
> *Id.* at 165-66, 105 S. Ct. at 3105 (citations omitted) (quoting *Monell v.
> Department of Social Services*, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018,
> 2035 n. 55-56 L. Ed. 2d 611 (1978)). In other words, a plaintiff in an
> action against a government official in his personal capacity can recover
> only against the official's personal assets. The assets of the governmental
> entity are not accessible. The reverse is true in an official capacity
> lawsuit. Furthermore, "to establish personal liability in a § 1983 action,
> it is enough to show that the official, acting under color of state law,
> caused the deprivation of a federal right.... [I]n an official-capacity suit
> the entity's 'policy or custom' must have played a part in the violation of
> federal law." *Id.* 473 U.S. at 166, 105 S. Ct. at 3105 (citations omitted).

*Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1060 (11th Cir. 1992) (emphasis

added).

12

Therefore, any official capacity claims that Mr. Chambers seeks to assert against Officers Escott and Gardiner are duplicative of his federal claims brought against the COB. Accordingly, the Motion is due to granted as to all official capacity federal claims asserted against Officers Escott and Gardiner.

### b.    Personal Capacity Claims

### (1)    Unlawful Arrest/False Imprisonment

Regarding Mr. Chambers's claim for unlawful arrest/false imprisonment against Officers Escott and Gardiner:

> [A]ll that is required for qualified immunity to be applicable to an arresting officer is " <u>arguable probable cause to believe that a person is committing a particular public offense</u>," *Redd v. City of Enterprise*, 140 F.3d 1378, 1384 (11th Cir.1998); "that is, where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest' the plaintiffs," *id.* at 1382 (citation omitted). *See Jones*, 174 F.3d at 1283 n. 3 ("Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry.").

*Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (emphasis added).

Here, the undisputed evidence confirms that even if Officer Escott did not have actual probable cause to arrest Mr. Chambers for obstructing governmental operations (as he was charged), the reports that Officer Escott received from Mr. Heard and Mr. Tate (even if they both lied to Officer Escott about the threatening nature of Mr. Chambers's actions at Roosevelt Park) are sufficient to establish arguable probable

cause for his arrest. Certainly, Mr. Chambers has not pointed to any binding authorities which suggest that the less demanding arguable probable cause standard is not reached under circumstances comparable to those facing Officer Escott and Gardiner. Accordingly, the Motion is due to granted in favor of Officers Escott and Gardiner as to Mr. Chambers's claim for unlawful arrest/false imprisonment because of their qualified immunity defense.

### (2)    Excessive Force

In addition to his federal unlawful arrest claim, Mr. Chambers attempts, in his opposition brief, to assert discrete claims for excessive force against Officer Escott and Officer Gardiner. As the Eleventh Circuit has clarified the appropriate scope of excessive force as a federal constitutional violation:

> "Under this Circuit's law ... <u>a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim</u>." *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir.2000) (citing *Williamson v. Mills*, 65 F.3d 155, 158–59 (11th Cir.1995)). The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871–72, 104 L. Ed. 2d 443 (1989). It follows, then, if an arresting officer does not have the right to make an arrest, he does not have the right to use any degree of force in making that arrest. This is the premise of Bashir's "excessive force" claim; but this is not what is meant by "excessive force." An excessive force claim evokes the Fourth Amendment's protection against the use of an unreasonable quantum of force (*i.e.*, non-de minimis force unreasonably disproportionate to the need) in effecting an otherwise lawful arrest. <u>When properly stated, an excessive</u>

<u>force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest</u>. A claim like Bashir's—that the deputies used excessive force in the arrest because they lacked the right to make the arrest—is not a discrete constitutional violation; it is dependent upon and inseparable from his unlawful arrest claim. *Jackson*, 206 F.3d at 1171. We reiterate, where an excessive force claim is predicated solely on allegations the arresting officer lacked the power to make an arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim. *Id.*; *Williamson*, 65 F.3d at 158–59. <u>Bashir does not present a discrete excessive force claim and, therefore, his excessive force claim fails as a matter of law</u>.

*Bashir v. Rockdale County*, 445 F.3d 1323, 1331-32 (11th Cir. 2006) (emphasis added).

Turning to Mr. Chambers's complaint, the court has studied the allegations of his first cause of action which constitute his federal claim asserted against all the defendants. (Doc. 44 ¶¶ 6-18). Nowhere within this count does Mr. Chambers specifically complain about the manner in which he was handcuffed, arrested, or detained by either Officer Escott or Officer Gardiner or otherwise divide his excessive force allegations into subparts separate from his unlawful arrest ones. Instead, Mr. Chambers only minimally mentions the term excessive force and, when he does so, such allegation is directly linked (and derivative of) his federal unlawful arrest claim. (*See, e.g.,* Doc. 44 ¶ 15 ("The actions of the defendants constitute an unlawful and false imprisonment and excessive use of force . . . .")). Therefore, under the Eleventh

Circuit's holding in *Bashir*, and given the contours of Mr. Chambers's pleading, Mr. Chambers's excessive force allegations are subsumed by his federal cause of action for unlawful arrest.

To the extent that Mr. Chambers's opposition brief contains contentions and evidentiary citations about the inappropriate or unconstitutional manner of the force used by either Officer Escott or Officer Gardiner, such claims and any corresponding critical elements, which have not been alleged by him in a pleading, are similarly subject to summary judgment. The Eleventh Circuit has made it unmistakably clear that "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (citing *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996)). *Gilmour* dealt with a plaintiff who was attempting to assert a new claim at the summary judgment stage. *Gilmour*, 382 F.3d at 1314-15.

Additionally, a more recent decision by the Eleventh Circuit cites to *Gilmour* and confirms that a district court's consideration of <u>any critical amendment</u> asserted merely as part of the briefing process is disfavored.

> The current practice in some district courts—especially in the summary judgment setting—is to ignore what the respective parties alleged in their complaint and answer and to consider their claims and defenses as depicted in the memoranda they filed in support of or in opposition to a motion for summary judgment. As is the situation here, the

claims and defenses presented in the memoranda supporting or opposing summary judgment are not presented in the complaint and answer with the specificity required by the Federal Rules of Civil Procedure and the Supreme Court's decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); rather, they are presented in a shorthand fashion. The result is that on appeal we have difficulty in determining whether the district court, in granting summary judgment, ruled on the claims and defenses as stated in the complaint and answer or as stated in the memoranda submitted to the court on summary judgment, as if the pleadings had been amended by implied consent.

We encountered this dilemma most recently in *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244 (11th Cir. 2012), *cert. denied*, ___ U.S. ___, 133 S. Ct. 856, 184 L. Ed.2 d 656 (2013). There, in their motion for summary judgment, the plaintiffs sought to eliminate a critical deficiency in the allegations of their amended complaint by including additional facts. The defendants did not object to this tactic on the ground that the plaintiffs were, in effect, seeking to amend their complaint. And the district court, in ruling on the sufficiency of the complaint, appeared to have considered the additional facts as if they had been alleged in the complaint. In affirming the district court's dismissal of the claim at issue, we refused to consider these additional facts, citing precedent that precludes a plaintiff from amending its complaint "through argument at the summary judgment phase of proceedings." *Id.* at 1258 n. 27. "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).

This court's precedent foreclosed Well–Come's attempt to amend its complaint at the summary judgment stage without seeking leave of court pursuant to Rule 15(a)(2). Accordingly, the District Court should have disposed of Well–Come's claim with a statement that Well–Come failed to establish that ASRRG and ASIS issued a commercial general liability policy and excess/umbrella liability policy to Flintlock LLC, as alleged in paragraphs 6 and 7 of its complaint. We affirm the court's

judgment on that ground. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir.2010) ("This court may affirm a decision of the district court on any ground supported by the record.").

*Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1227-28 (11th Cir. 2013) (emphasis added).

Thus, *Gilmour* and *Flintlock* procedurally foreclose Mr. Chambers from belatedly attempting to amend his complaint in any critical manner through his brief. Accordingly, the Motion is due to be granted to the extent that Mr. Chambers purports to assert independent claims of excessive force against Officer Escott or Officer Gardiner.

### 2.   False Arrest Claim Asserted Against the COB

Here, based upon the above analysis pertaining to Mr. Chambers's federal cause of action asserted against Officers Escott and Gardiner, the only conceivable federal municipal claim that remains is one for false arrest. Constitutional claims asserted against a municipality pursuant to § 1983 are governed by the rules established by the Supreme Court in *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). In order for the COB to be subjected to § 1983 liability, *Monell* requires that Mr. Chambers prove, at a minimum:  (1) that the individual defendants' actions were unconstitutional; and (2) that a municipal "policy" or "custom" of the COB caused these violations to occur. *See, e.g., Gold v. City of*

18

*Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) ("[A] municipality may be held liable [under section 1983] for the actions of a police officer only when municipal 'official policy' causes a constitutional violation.").

Establishing official municipal policy in the context of challenged police action can arise when the record reflects deficient officer training. In *City of Canton v. Harris*, 489 U.S. 378, 392, 109 S. Ct. 1197, 1206, 103 L. Ed. 2d 412 (1989), the Supreme Court acknowledged that "there can be limited circumstances in which an allegation of a 'failure to train' can be the basis for liability in § 1983," and held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to 'deliberate indifference' to the rights of persons with the police come into contact." In other words, the deliberate indifference standard requires a conscious choice on the part of a municipality and the individual shortcomings of a police officer or even the negligent administration of an "otherwise sound program" are insufficient grounds for maintaining a § 1983 municipal claim. *City of Canton*, 489 U.S. at 390, 109 S. Ct. at 1206.

Here, in an effort to show § 1983 policy or custom, Mr. Chambers appears to rely upon the *City of Canton* approach. As Mr. Chambers contends:

> Substantial evidence exists that City policies or customs allowed or ratified the Defendant Officer's actions. Record evidence exists that the City has failed to adequately train or provide guidance by a written

policy in connection with the handling, handcuffing or transporting of an injured detainee. No policy exists as to the use of seat belts. No policy exists regarding the report of injuries sustained by a detainee. The City's policy as to restraining an injured detainee - leaving it to the discretion of the officers, is inadequate as it allows situations like the one at bar to occur. Officers can restrain injured detainees in ways that cause or worsen their injuries and/or transport them without protecting them by seatbelts, simply by "deciding" to do so. Further, the City's record of tracking performance of officers based on the number of arrests they make and then disciplining them for lack of enough arrests, creates an atmosphere in which, like here, officers create the circumstances needed to make an arrest in order to meet performance expectations. Here, in the months preceding the incident, Escott had next to no arrests and that policy encouraged or, at a minimum, allowed Defendant Escott to make an unjustifiable arrest lacking in any basis in fact or law. Lastly, substantial evidence exists that the City allowed Officer Escott to continue to perform his duties with knowledge of his track record of suspensions, censures, false reporting, fraudulent conduct and intentional violence toward detainees. By doing so, a reasonable jury could easily conclude the City's policies and customs, or lack thereof, allowed or ratified the officers' conduct in this case.

(Doc. 37 at 17-18).

Thus, to the limited extent that he does address it,[10] Mr. Chambers appears to premise his federal false arrest claim against the COB solely upon the disputed authority of Officer Escott to place Mr. Chambers under arrest for obstruction of government operations. However, "[t]here is no *respondeat superior* liability making a municipality liable for the wrongful actions of its police officers in making a false

---

[10]   The bulk of Mr. Chambers's opposition centers upon excessive force, but, as previously explained, a discrete cause of action for excessive force is not before the court.

arrest." *Gold*, 151 F.3d at 1350 (citing *Monell*, 436 U.S. at 691, 98 S. Ct. at 2036 ).

As the Eleventh Circuit further instructed in *Gold*:

> Since a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees, the Supreme Court has further explained that a plaintiff may prove a city policy by showing that the municipality's failure to train evidenced a "deliberate indifference" to the rights of its inhabitants, as follows:
>
> > We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. This rule is most consistent with our admonition ... that a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.... "[M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality-a "policy" as defined by our prior cases-can a city be liable for such a failure under § 1983.

*City of Canton*, 489 U.S. at 388-89, 109 S. Ct. 1197 (internal citations omitted).

To establish a "deliberate or conscious choice" or such "deliberate indifference," a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action. *See Board of County Com'rs v. Brown*, 520 U.S. 397, ___ , 117 S. Ct. 1382,

1390-91, 137 L. Ed. 2d 626 (1997); *Young v. City of Augusta, Georgia*, 59 F.3d 1160, 1171-72 (11th Cir. 1995); *Church v. City of Huntsville*, 30 F.3d 1332, 1342-46 (11th Cir. 1994); *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir.1990); *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1556-57 (11th Cir. 1989).This Court repeatedly has held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise. For example, in *Wright v. Sheppard*, 919 F.2d 665 (11th Cir. 1990), this Court held that a sheriff's department was not liable for a deputy's acts when "no evidence of a history of widespread prior abuse ... put the sheriff on notice of the need for improved training or supervision." *Id.* at 674. Indeed, in *Church v. City of Huntsville*, 30 F.3d 1332 (11th Cir.1994), this Court reversed a district court's preliminary injunction against the City of Huntsville, holding that the plaintiffs were not likely to succeed on the merits of their failure-to-train claim without proof that the City was aware of a prior incident in which constitutional rights were similarly violated. Id. at 1342-46. *See also Popham v. City of Talladega*, 908 F.2d 1561, 1564-65 (11th Cir.1990) (finding no liability for failure to train when no pattern of incidents put the City on notice of a need to train). More importantly, in *Brooks v. Scheib*, 813 F.2d 1191 (11th Cir.1987), even though there had been ten citizen complaints about police officer Scheib, this Court held that the City did not have any notice of past police misconduct because the plaintiff "never demonstrated that past complaints of police misconduct had any merit." *Id.* at 1193. This Court aptly noted, "Indeed, the number of complaints bears no relation to their validity." *Id.*

*Gold*, 151 F.3d at 1350-51 (footnotes omitted) (emphasis added).

Here, Mr. Chambers references no documented history of meritorious claims for unconstitutional arrests by Officer Escott specifically[11] or other COB police officers

---

[11] Mr. Chambers's reference to Officer Escott's admittedly "filing a false report and making false statements" and the like, all pertain to Officer Escott's dealings with his supervisors, and not with persons whom he had arrested. (Doc. 37 at 12 ¶¶ 33, 34).

generally, which might, consistent with *Canton*, create a triable issue with respect to the COB's duty to provide further training for its officers in the area of arrests. *Cf. City of Canton*, 489 U.S. at 387, 109 S. Ct. at 1204 ("Nor, without more, would a city automatically be liable under § 1983 if one of its employees happened to apply the policy in an unconstitutional manner, for liability would then rest on *respondeat superior*."). Additionally, Mr. Chambers has not shown (and cannot show) that his case falls into the narrow "so obvious[ly]" needing training category. *See Gold*, 151 F.3d at 1352 ("In short, to date, the Supreme Court has given only a hypothetical example of a need to train being 'so obvious' without prior constitutional violations:  the use of deadly force where firearms are provided to police officers." (citing *City of Canton*, 489 U.S. at 390 n.10, 109 S. Ct. at 1205 n.10)).

Finally, noticeably absent from his brief is any case authority to support Mr. Chambers's theory of municipal liability against the COB. *Cf. Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court). Therefore, the court finds that Mr. Chambers's efforts to show an actionable municipal policy or custom in response to the Motion are

inadequate. Accordingly, the Motion is also due to be granted with respect to Mr. Chambers's first cause of action asserted against the COB.

**B.    Mr. Chambers's Second Cause of Action**

**1.    State Agent Immunity Bars Mr. Chambers's State Law Claim For Unlawful Arrest/False Imprisonment Asserted Against Officers Escott and Gardiner In Their Personal Capacities**.

As pled in his complaint, Mr. Chambers's state law claim against Defendants is expressly limited to unlawful arrest/false imprisonment.[12] (*See* Doc. 44 ¶ 20 ("The acts and conduct of the Defendants constitute false arrest and false imprisonment under the laws and Constitution of the State of Alabama . . . .")). Under the doctrine of state agent immunity, a public actor, such as a law enforcement official, who is exercising discretionary authority is immune from claims that merely allege negligence, unskillfulness, or carelessness with respect to injuries arising out of those functions. *Cf. Ex parte City of Tuskegee*, 932 So. 2d 895, 906 n.6 ("Although Arnold alleges that John Moon and Theodore Moon were negligent, there is no allegation that their conduct leading to her arrest and the arrest itself falls outside the scope of an action that

---

[12]   As a result, Mr. Chambers's opposition to summary judgment on this second count, which appears to treat Defendants' alleged use of excessive force as a separate state law claim, is ineffective because procedurally that particular claim is not before this court. (*See* Doc. 37 at 18 ("Defendant Escott's actions in yanking and twisting his arm causing injury to him, . . . and intentionally bouncing him around the back of the car to further injure or intimidate him . . . .")); *see also Gilmour, supra* and *Flintlock, supra.*

involves the exercise of discretion or an exercise in judgment."). Because of the comparable analysis applicable to state agent immunity, summary judgment in favor of Officers Escott and Gardiner as to Mr. Chambers's state law claim for unlawful arrest/false imprisonment asserted against them in their personal capacities is similarly appropriate for the reasons that the defense of qualified immunity protects them under federal law.

In particular, as the Supreme Court of Alabama has restated the rule of state agent immunity:

> A State agent [such as a municipal police officer] *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . .
>
>> (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or . . . .

*Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000) (emphasis in original).

Further, Mr. Chambers has not adduced evidence from which a reasonable jury could conclude that either Officer Escott or Officer Gardiner deviated from "detailed rules or regulations"[13] or acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law" when arresting and

---

[13]   *City of Tuskegee*, 932 So. 2d 895, 906 n.6.

25

confining him. *Cranman,*792 So. 2d at 405. Here, Mr. Chambers has conceded that Officers Escott and Gardiner "were engaged in discretionary functions" (Doc. 37 at 14 n.2) and yet offers no authority for his undeveloped proposition that their "actions (1) were not supported by probable cause and (2) fall within the exception to state-agent immunity." (*Id.* at 18).[14] Therefore, under such circumstances, the court finds that state agent immunity protects Officer Escott and Officer Gardiner from exposure to personal liability for Mr. Chambers's state law claim of unlawful arrest/false imprisonment.

### 2. Unlawful Arrest/False Imprisonment Claim Asserted Against the COB

Relying upon *City of Tuskegee*, Defendants assert that if state agent immunity protects Officers Escott and Gardiner from a claim for unlawful arrest under Alabama law, then the COB is also immune from such liability. (Doc. 34-1 at 27). As articulated by the Supreme Court of Alabama in *City of Tuskegee*:

> Arnold alleges that the City of Tuskegee is vicariously liable for the negligence, carelessness, and unskillfulness of John Moon and Theodore Moon. The petitioners argue that because the officers are immune from liability under § 6–5–338(a) the City is immune from liability under § 6–5–338(b). Section § 6–5–338(b) provides:

---

[14] Factually, Mr. Chambers mistakenly focuses solely upon the immaterial dispute over whether he was ever asked to provide a form of identification by Officer Escott (Doc. 37 at 18-19), and ignores the undisputed material facts about the reports made by Mr. Heard and Mr. Tate to Officer Escott about Mr. Chambers's prior disruptive behavior which led to his arrest and subsequent confinement.

> "This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers. No immunity is extended hereby to any private non-governmental person or entity, including any private employer of a peace officer during that officer's off-duty hours."

> "It is well established that, if a municipal police officer is immune pursuant to § 6–5–338(a), then, pursuant to § 6–5–338(b), the city by which he is employed is also immune." *Howard*, 887 So.2d at 211. Because we have held that John Moon and Theodore Moon are immune from Arnold's claim alleging negligence, unskillfulness, or carelessness, the City is also immune from liability as to this claim by virtue of § 6–5–338(b). Therefore, the petition for a writ of mandamus ordering the trial court to stay discovery is due to be granted as to the claims against the City based upon the negligence, carelessness, and unskillfulness of John Moon and Theodore Moon, and we direct the trial court to conduct a hearing on the City's motion for a summary judgment as to these claims.

*City of Tuskegee*, 932 So. 2d at 910.

Defendants' position is well-taken. In accord with *City of Tuskegee*, the COB is immune from Mr. Chambers's state claim for wrongful arrest/false imprisonment because Officers Escott and Gardiner are immune on that claim. Accordingly, the Motion is also due to granted on Mr. Chambers's second cause of action asserted against the COB.

## V.   CONCLUSION

For all of the foregoing reasons, the Motion is due to be granted.[15] The court will

---

[15] Because the court finds that summary judgment in favor of Defendants is appropriate regardless of the admissibility of Mr. Chambers's facts that they have challenged, Defendants' Strike

enter a separate final judgment order consistent with this memorandum opinion.

**DONE** and **ORDERED** this the 14th day of February, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

Motion is due to be termed as moot.  Further, because the contested material issues on summary judgment are straightforward, Defendants' separate request to present oral argument is due to be denied.

28